This is an action of covenant, founded on covenants contained in a bill of sale made by Staton to Read, 2d March, 1812, of a negro girl warranted as to title, and also warranted to be sound and healthy as far as the vendor knew. And also, that he would pay a penalty if,c. The breaches assigned *Page 160 
are, that the vendor had no title; that the girl was unsound, and he knew it; and that he had not paid the penalty. The pleas are, first, that he did not break the covenant; secondly, that the defendant performed the covenant; and thirdly, that the girl was not recovered from Read by due course of law in a competent court. Issues are joined on the two first pleas, and a demurrer is joined upon the third plea. A verdict has been finally given for the plaintiff on these issues. And the demurrer of the plaintiff to the third plea of the defendant was holden to be good by the Circuit Court. A bill of exceptions has been filed, and errors assigned, and in nullo est erratum pleaded. It is stated in the bill of exceptions that Donelson owned the negro in question on the 3d of December, 1810, and conveyed her by bill of sale to Harper Garner on that day, and also divers other articles of property, that is to say, his horses and his household and kitchen furniture. This bill of sale was registered in the year 1815. Harper Garner paid debts for Donelson to the amount of $80. He got the negro girl aforesaid from Donelson, and a horse worth $70, and a hundred dollar note on Williams, which was satisfied by Williams; all the property mentioned in the bill of sale was sent by Harper Garner with his brother Parish Garner, who moved with Donelson to Duck River. The negro was sometimes in the possession of Parish Garner and sometimes in the possession of Donelson. They lived within sight of each other, and Parish Garner was the brother in-law of Donelson. The next summer Thomas Garner by directions of Harper Garner, took the girl away and sold her to Staton, and made a bill of sale to Staton dated the 27th of August, 1813; and in that bill of sale warranted the title but not the sanity of the girl. Harper Garner permitted Donelson to use all the property mentioned in the bill of sale except the negro. It was not proved that Donelson owed any thing which Harper *Page 161 
and Thomas Garner did not assume, except the debt recovered by Young before a justice of the peace for the county of Davidson, for which the negro was sold in 1812. This execution was grounded on an execution and certificate from Bedford county, founded on this judgment from Davidson county in favor of Young, rendered the 12th of August, 1808. Exception was taken to the reading of these papers An execution issued on Young's judgment in Davidson the 12th of August, 1811, which also was excepted to. It was proved that the warrant and judgment in Davidson were lost, but were truly stated in the execution. Martin purchased the girl at the execution sale aforesaid for $54, and sold her again for $100. Thomas Garner bid for her at the execution sale $130, thinking to retain the money. He afterwards offered to purchase her from Martin. The girl was dumb or nearly so. This however was discoverable by ordinary diligence; the girl was about ten or eleven when purchased. Her price $160. The plaintiff gave in evidence the verdict of a jury summoned by the proper officer to inquire whose property the girl was, who found her to be the property of Donelson. The Garners did not forbid the sale, nor show their bill of sale when the execution sale took place. When Donelson's bill of sale was obtained, and when he moved away with Parish Garner, he, Donelson, was overtaken by officers with attachments in favor of several creditors. Upon this record, divers questions arise. The first is, as to the third plea of the defendant, demurred to by the plaintiff, and holden to be sufficient by the Court; was it a good plea or not? This Court think it was not a good plea. When the vendor warrants the title of a chattel which he sells, if there be a better title in another person, and the vendee be dispossessed, though without any suit or action at law or in equity, the covenant for title is broken, as much as if there had been a recovery by suit. And *Page 162 
indeed it is much to be doubted whether a suit might not be sustained before dispossession, for if the vendee be obliged to wait till dispossessed; the warrantor by that time may be insolvent, though otherwise for a long time after the warranty.
The next question is, whether there ought to be a new trial, and that depends upon divers considerations. First, was any lien created by the execution issued by the justice in Davidson county in the year 1811 upon the personal chattels of Donelson? The Supreme Court has already decided this question in the negative, and we are satisfied with that decision. Secondly, was the bill of sale to Harper Garner void as to a creditor by non-registration within the time prescribed by law? It was made the 3d of December, 1810, and was registered in the year 1815. The time for registration was prolonged before the prescribed time expired. No chasm intervened between the prescribed time and the act giving further time. The bill of sale, therefore, never became void for want of registration, and before the arrival of the final period for registration it was good as to all persons, creditors as well as others. It passed the title to Harper Garner, if the sale itself be not liable to some other objection. A third question is whether was the conveyance by Donelson to Harper Garner fraudulent and void under the circumstances which attended it? The possession being left sometimes with Parish Garner and sometimes with Donelson is a circumstance not explained; and to that must be added that the Garners paid debts only to the amount of $180, leaving Young's debt unsatisfied. Besides the negro and other property mentioned in the bill of sale, Garner received a horse of Donelson worth $70, and a note of $100 on Williams, which he paid. These were nearly equal to all the debts they paid. The value of the property received from Donelson greatly exceeded the debts paid by Garner. If this *Page 163 
transaction be validated, then there will be saved for Donelson, at the expense of his creditors, a part of the property which ought to be employed for the satisfaction of his creditors. If it be a hardship to set aside the whole transaction when the articles received were paid for in part by satisfaction of Donelson's debts, still that is better than by making it good for all to exclude a creditor. The loss will fall upon him who produced the dilemma. The conveyance therefore to Harper Garner was fraudulent and void as to a creditor. A fourth question is, whether the invalidity of this bill of sale was done away by a subsequent sale for valuable consideration to Staton; answer, there was not any sale to Staton which can be noticed in a dispute between him or his assignee and a creditor. The execution sale was in the fall of the year 1812. The bill of sale to Staton was on the 27th of August, 1813. This sale was not rendered notorious by a bill of sale, proved and registered as required by 1784, c. 10, sec. 7. There is no evidence of a sale which can be supported against a creditor. The property remained still as it was before. And besides, a sale, void for fraud as against a creditor, can not become unavoidable by a subsequent sale of the vendee for a valuable consideration, and bona fide, to one not conusant of the former fraud. Newland, 404, 496; 1 Atk. 353; 2 Ves. 158; 5 Ves. 26, 877. The property therefore remained liable, as it was in the hands of Harper Garner, notwithstanding the transaction between him and Staton.
A fifth question is as to the admissibility of the verdict of the jury summoned to inquire in whom the property of the girl was. It was an inquisition not made by virtue of any legal precept, nor under the direction of a court legally constituted to instruct the jury in matters of law, nor to exclude incompetent testimony, nor to set aside the verdict if wrong or unjustly obtained, nor to confirm it by pronouncing a judgment upon it. It ought not to have been *Page 164 
given in evidence on the trial of these issues. But had the evidence been rejected, still the same verdict ought to have been given, and, being right, the Court ought not to have set it aside.
A sixth question is as to the effect of the affidavits produced for the purpose of obtaining a new trial, and as to the propriety of hearing them at all. Is it consistent with principle to say that an affidavit, made by the plaintiff or defendant who can not give evidence in case of granting a new trial, shall be received to state matters upon which it should be granted? Supposing them admissible, they speak of new discovered testimony which is to be given by others. Either the affidavit of the witness himself should be offered, or some other indifferent testimony, showing that the proof relied on can be had. The seventh and last of these previous questions is whether parol evidence can be received to prove the former existence of a judgment and the loss thereof by the justice who gave it. That is legal testimony. How else could it be proved? And must the rights derived under the execution be lost when the judgment and execution itself shall be lost? The justices frequently mislay, lose, or destroy their judgments and executions. It would be exceedingly pernicious to the public if such evidence were not receivable. Upon the whole, it may be said that the bill of sale to Harper Garner was void, being covinous, and has not been set up by any posterior transaction, and that the verdict given ought to stand, notwithstanding any of the objections which had been made. The result of this discussion is that the judgment of the Circuit Court is correct and ought to be affirmed.